UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

ADAM YEOMAN,

                     Plaintiff,

   v.                                            Case No. 17-cv-1199-pp

DR. J. MANLOVE,
NURSE GAIL,
SGT. TRITT, and
HSM SCHRUBBE,

                     Defendants.

_____

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING THE AMENDED COMPLAINT (DKT. NO. 8)**

_____

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. §1983, alleging that the defendants violated his Eighth Amendment rights at the Waupun Correctional Institution ("WCI"). Dkt. No. 8. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee and screens the plaintiff's amended complaint.

**I.    THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee as long as he meets certain conditions. Id. One of those conditions is a requirement that the

1

plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On September 5, 2017, the court assessed an initial partial filing fee of $47.29. Dkt. No. 5. The plaintiff paid that amount on September 15, 2017. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filling fee and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.     SCREENING OF THE PLAINTIFF'S AMENDED COMPLAINT

### A.     Standard for Screening Complaints

The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court may dismiss a case, or part of a case, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   Facts Alleged in the Amended Complaint

0n January 20, 2015, the plaintiff ran into a concrete wall while playing basketball, and both heard and felt a "snap" in his forearm. Dkt. No. 8 at 2, 8. He immediately told Sergeant Tritt, and asked to see a nurse, but Tritt responded, "You don't look all that hurt to me," and refused to call the Health

3

Services Unit. Id. at 2-3. A different officer overheard their conversation and called for an emergency escort. Id. at 3.

The plaintiff indicates that immediately upon arriving at the HSU, he was "forced" to sign a $7.50 medical co-pay; he argues that this is against Division of Adult Institutions policy. Id. The plaintiff told Nurse Gail that he had both heard and felt his bone snap; he described feeling numbness in his fingers. Id. Gail recorded the plaintiff's pain as a ten out of ten, but the plaintiff says that she "did not believe that [his] arm was broken." Id. Instead, she noted that he had a two-centimeter laceration on his arm and gave him a Band-Aid to cover the wound. Id. Gail asked if the plaintiff had his own pain medication and an ice bag in his cell (items he indicates inmates are not allowed to have without a medical restriction). Id. Even though the plaintiff answered "no," Gail stated that the plaintiff was "good to go." Id. When the plaintiff tried to ask about treatment, Gail "attempted to force [him] to leave." He refused to do so, demanding either to see a doctor or to speak to a manager or supervisor. Id. at 4.

Doctor Manlove came into the hall, looked at the plaintiff's arm "for a few seconds to 'appear' as if he was interested in the problem." Id. The plaintiff says that Manlove "noted that there was a scratch and 'no bone displacement' with 'good rotation.'" Id. In contrast, the plaintiff indicates that he could not move his arm. Id. Manlove told the security staff that the plaintiff was "fine," diagnosed the plaintiff's injury as an "arm abrasion," and did not give him a splint, cast or sling, even though he asked and even though all of those items

4

were available at HSU. Id. HSU staff later gave the plaintiff a "makeshift" sling that is used for dislocated shoulders, which made his pain worse. Id. at 4-5.

The plaintiff filed several inmate complaints, and his family emailed the governor's office to demand action. Id. at 5. Four days later, on January 24, 2015, HSU called the plaintiff for an x-ray. Id. at 5, 8. Someone at HSU stated that "people were calling and making a lot of noise." Id. HSU manager Shrubbe stated, "Who do you think you are? The president?" Id. The x-ray confirmed that the plaintiff's arm was broken, and the plaintiff finally received a splint and pain medication. Id. On January 26, 2015, the plaintiff finally received a sling when he went to an off-site hospital. Id. The plaintiff went at least seven days without any medication for his broken arm. Id. at 5, 8.

Later, Correctional Officer O'Neil (who is not a defendant in this case) took the plaintiff's cast; the plaintiff alleges that it was because the plaintiff witnessed O'Neil use excessive force against a different inmate. Id. at 6-7. The plaintiff did not get his cast back until several hours later, when he filed complaints with the Security Director (also not a defendant in this case). Id. at 6.

The plaintiff also states that he has Irritable Bowel Syndrome ("IBS"), and that a doctor at UW Health in Madison prescribed him a special diet. Id. "HSU staff" refused to implement the doctor's orders for a special diet. Id. Instead, they have provided the plaintiff with a "nutritional drink," which he alleges they attempt to take away at every opportunity. Id. at 6-7. HSU has ordered the plaintiff to walk a quarter of a mile from his cell to HSU at every meal to get his

drinks. Id. The plaintiff notes that other inmates are allowed to keep their drinks in their cells. Id. at 7. Later, HSU issued an order requiring the plaintiff to consume his drink in front of the Unit Manager. Id. After that, the plaintiff was told that his drinks were "out of stock," even though he saw other inmates with those drinks during that timeframe. Id.

The plaintiff alleges that every time he files an inmate complaint or contacts his family about the way he is treated, "HSU staff" and "security staff" retaliate against him. Id. The plaintiff seeks monetary relief. Id. at 9.

### C. Legal Analysis of Alleged Facts

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)).

Liability under §1983 is predicated on a defendant's personal involvement in the constitutional deprivation. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Id. (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)). The official "must know about the conduct and facilitate it, approve it, condone it, or turn

a blind eye." Id. (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)).

"Prison officials violate the Eighth Amendment . . . when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). A prison official shows deliberate indifference when he has knowledge of the inmate's serious medical condition, and either acts or fail to act in disregard of that risk. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). A medical condition is serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. Id.

The court concludes that the plaintiff has alleged sufficient facts to allow him to proceed with an Eighth Amendment deliberate indifference claim against defendants Tritt, Gail and Manlove regarding treatment of his broken forearm. The plaintiff told each of these three defendants about hearing and feeling a snap in his forearm that caused a lot of pain. Sergeant Tritt refused to call HSU for an examination. Nurse Gail and Doctor Manlove ignored his complaints of severe pain and implied that he was lying. The plaintiff did have a broken arm, and went almost an entire week with no pain medication. These allegations are sufficient to state an Eighth Amendment deliberate indifference claim against these three defendants.

The plaintiff mentions Shrubbe only once in relation to the broken arm. He says that when he finally went to HSU to get an x-ray, Shrubbe asked him,

7

"Who do you think you are? The President?" While this statement may have been insensitive, it does not state a claim for deliberate indifference. The court will not allow the plaintiff to proceed against Schrubbe.

The plaintiff also alleges that he did not receive prescribed treatment for IBS, and generally alleges "retaliation." He does not identify specific individuals who denied him prescribed treatment or retaliated against him, and "HSU staff" and "security staff" are not "persons" within the meaning of §1983. See Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015). The court will not allow the plaintiff to proceed on his Eighth Amendment claim regarding treatment of his IBS, and will not allow him to proceed on a First Amendment retaliation claim.

### III. CONCLUSION

The court **DISMISSES** HSM Schrubbe as a defendant.

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **ORDERS** the agency having custody of the plaintiff to collect from the plaintiff's prison trust account the **$302.71** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forward payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another institution—county, state,

or federal—the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on the defendants. The defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Milwaukee, Wisconsin 53202

The court advises the plaintiff that failure to file documents or pleadings by the deadlines the court sets may result in the dismissal of his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 26th day of October, 2017.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**